IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
BATESVILLE DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

SEP 07 2016

JAMES W. McCORMACK, CLERK
By: _____ DEP CLERK

BAD BOY, INC.                                                                                 PLAINTIFF

v.                      NO. CV- 1:16cv114-DPM

SPARTAN MOWERS, LLC                                         DEFENDANT

**COMPLAINT**    This case assigned to District Judge Marshall
and to Magistrate Judge Kearney

Comes now the Plaintiff, Bad Boy, Inc., by and through its undersigned attorneys, and for its complaint against the Defendant, Spartan Mowers, LLC, alleges and states the following:

1. Plaintiff is a corporation organized and existing under the laws of the State of Arkansas, with its principal place of business located in Batesville, Arkansas. Plaintiff engages in the manufacture and sale of residential and commercial grade zero turn mowers under the trademark BAD BOY. Plaintiff does substantial business in the State of Arkansas, including the Eastern District of Arkansas, Batesville Division.

2. Defendant is a limited liability company organized and existing under the laws of the State of Arkansas, with its principal place of business located in Batesville, Arkansas. Defendant engages in the manufacture and sale of residential and commercial grade zero turn mowers under the trademark SPARTAN. Defendant does substantial business in the State of Arkansas, including the Eastern District of Arkansas, Batesville Division.

3. Defendant has made and sold SPARTAN mowers, including the infringing mowers that are the subject of this lawsuit, in the State of Arkansas, including the Eastern District of Arkansas, Batesville Division.

4. This is an action for patent infringement arising under the Patent Laws of the United

States, Title 35 of the United States Code. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1338. More specifically, the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1338(a) because the claims in this case arise under the Patent Act, 35 U.S.C. § 271, *et seq.*

5. This Court has personal jurisdiction over Defendant and venue is proper in the Eastern District of Arkansas, Batesville Division, pursuant to 28 U.S.C. §1391(b) and (c) and 28 U.S.C. §1400 in that Defendant resides in the Eastern District of Arkansas, Batesville Division, regularly transacts business in the Eastern District of Arkansas, Batesville Division, and has committed the acts complained of herein within the Eastern District of Arkansas, Batesville Division, and elsewhere, which acts have caused injury to Plaintiff both within the Eastern District of Arkansas, Batesville Division, and elsewhere.

6. Plaintiff has manufactured and sold residential and commercial grade zero turn mowers for many years.

7. Prior to November of 2013, Robert Foster, a principal of Defendant, was a shareholder of Plaintiff. In November of 2013, Robert Foster sold all of his shares in Plaintiff.

8. On May 4, 2010, after a full and fair examination, the United States Patent and Trademark office duly and legally issued US Patent No. 7,708,292, entitled "Independent Four Wheel Vibration Damping System for Riding Mowers" ("'292 Patent"). The '292 Patent was issued to the inventor and former Plaintiff shareholder, Robert Foster. By means of an assignment recorded at the United States Patent and Trademark Office on December 11, 2009, Robert Foster assigned all rights, title, and interest in the patent application granted as the '292 Patent to Plaintiff.

9. Since its issuance, Plaintiff's '292 Patent has been in full force and effect. Plaintiff

2

owns all right, title and interest in the '292 Patent, including the right to sue for past, present and future infringements. A true and correct copy of the '292 Patent is attached hereto and incorporated herein as Exhibit "A". A true and correct copy of the assignment is attached hereto and incorporated herein as Exhibit "B".

10. Defendant is making, using, selling, and/or offering for sale mowers that infringe on one or more claims of the '292 Patent. The infringing mowers are marketed by Defendant under the name "SPARTAN SRT" and possibly other names as well.

11. Defendant has sold its infringing mowers to retail stores within the State of Arkansas and advertises its infringing mowers via internet websites including one it maintains (i.e. www.spartanmowers.com) that is accessible from the Eastern District of Arkansas, Batesville Division. Upon information and belief, Defendant also owns and operates interactive websites, including www.spartanmowers.com, that market the infringing mowers. Furthermore, Defendant's infringing mowers may be obtained by consumers at retail establishments within the Eastern District of Arkansas, Batesville Division.

12. The infringing mowers utilize a suspension system that infringes the '292 Patent.

13. On December 10, 2015, Plaintiff sent Defendant a letter regarding its infringing activities. Plaintiff has received no reply from Defendant to this letter.

14. Defendant's principal, Robert Foster, had detailed and personal knowledge of the '292 Patent.

15. Defendant continues to willfully infringe on Plaintiff's '292 Patent.

16. Defendant will continue to infringe on Plaintiff's '292 Patent unless enjoined and restrained by the Court. As a direct and proximate result of Defendant's patent infringement, Plaintiff

has suffered and will continue to suffer irreparable harm. In addition, Plaintiff has been, and will continue to be, harmed and injured in its business and property and has sustained, and will continue to sustain, damages to its business, property and profits.

## COUNT 1 (PATENT INFRINGEMENT)

17. Plaintiff restates and incorporates the allegations contained in paragraphs 1-16 herein.

18. The above-referenced patent, United States Patent Number 7,708,292 (the '292 Patent), is valid, was duly and legally issued by the United States Patent and Trademark Office, and is owned exclusively by Plaintiff.

19. Plaintiff's products have been marked with United States Patent Number 7,708,292.

20. Defendant is making, using, selling, and/or offering for sale mowers, which infringe on one or more claims of United States Patent Number 7,708,292 in contravention of 35 U.S.C §271.

21. Defendant's activities with respect to Plaintiff's patent have been without the express or implied license of Plaintiff.

22. On December 10, 2015, Plaintiff delivered written notice of Defendant's infringing activities to Defendant.

23. Defendant received and then willfully disregarded the written notice.

24. Defendant has directly infringed, both literally and/or under the doctrine of equivalents, the '292 Patent, and continues to directly infringe the '292 Patent.

25. Defendant's infringement of the '292 Patent is willful.

26. Defendant's infringing actions have caused, and will continue to cause if not enjoined, irreparable harm to Plaintiff.

27. Plaintiff is entitled to a permanent injunction prohibiting Defendant from infringing

upon the '292 Patent.

28. Plaintiff has been, and will continue to be, harmed and injured in its business and property and has sustained, and will continue to sustain, damages to its business, property and profits, for which it is entitled to judgment.

29. Defendant's past and continuing infringement of the '292 Patent has been deliberate and willful.

30. Defendant's conduct warrants an award of treble damages pursuant to 35 U.S.C. §284.

31. Defendant's conduct warrants a finding of an exceptional case and an award of attorneys' fees to Plaintiff pursuant to 35 U.S.C. §285.

32. Plaintiff is entitled to actual and enhanced damages for Defendant's willful infringement acts as determined at the trial of this matter, and to reasonable attorney's fees, costs and interest.

WHEREFORE, the Plaintiff, Bad Boy, Inc., prays that it be granted judgment against the Defendant, Spartan Mowers, LLC, and that it be awarded the following relief:

A. A judgment that Plaintiff's '292 Patent is valid and enforceable and that Defendant has willfully infringed and actively induced others to infringe the '292 Patent.

B. A permanent injunction prohibiting Defendant from infringing upon the above referenced patent, as provided in 35 U.S.C. §283.

C. An award of monetary damages adequate to compensate Plaintiff for Defendant's infringement, but in no event less than a reasonable royalty as provided under 35 U.S.C. §284.

D. An award of treble damages under 35 U.S.C. §284 as a result of Defendant's willful

infringement of the '292 Patent.

E.   An award of costs and interest.

F.   A judgment that this case is exceptional and that Defendant be ordered to pay Plaintiff reasonable attorneys' fees as provided by 35 U.S.C. §285.

G.   An award of such further and additional relief as this Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all issues so triable.

Respectfully submitted,

Trent C. Keisling, #93226
KEISLING & PIEPER, PLC
501 W. Cassatt
P.O. Box 10379
Fayetteville, AR 72703
(479) 251-0800 - Telephone
(479) 251-0801 - Facsimile

FUQUA CAMPBELL, P.A.
Riviera Tower
3700 Cantrell Road, Suite 205
Little Rock, Arkansas 72202
(501) 374-0200 – Telephone
(501) 975-7153 – Facsimile

By: /s/ Phil Campbell
Phil Campbell, Ark. Bar No. 81028
Blake Hendrix, Ark Bar No. 86066
Eric Gribble, Ark. Bar No. 2002192
Haley Burks, Ark. Bar No. 2011286

ATTORNEYS FOR PLAINTIFF BAD BOY, INC.


US007708292B2

## (12) United States Patent
### Foster

(10) Patent No.: **US 7,708,292 B2**
(45) Date of Patent: **May 4, 2010**

(54) **INDEPENDENT FOUR WHEEL VIBRATION DAMPING SYSTEM FOR RIDING MOWERS**

(75) Inventor: **Robert Foster**, Batesville, AR (US)

(73) Assignee: **Bad Boy, Inc.**, Batesville, AR (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 161 days.

(21) Appl. No.: **11/881,752**

(22) Filed: **Jul. 30, 2007**

(65) **Prior Publication Data**
US 2009/0033054 A1 Feb. 5, 2009

(51) Int. Cl.
*B60G 9/02* (2006.01)
(52) U.S. Cl. .............................. **280/124.117**
(58) Field of Classification Search .......... 56/14.7, 56/15.8, 14.8; 280/124.117, 124.128, 124.136, 280/124.151, 124.157
See application file for complete search history.

(56) **References Cited**
U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 2,346,319 | A | * | 4/1944 | Mitchell | 301/133 |
| 3,025,079 | A | * | 3/1962 | Gouirand | 280/124.151 |
| 4,310,171 | A | * | 1/1982 | Meikle | 280/86.75 |
| 4,486,030 | A | * | 12/1984 | Takata et al. | 280/124.107 |
| 4,690,427 | A | * | 9/1987 | Raidel, Sr. | 280/124.118 |
| 6,357,077 | B1 | * | 3/2002 | Jones et al. | 16/44 |
| 6,857,254 | B2 | * | 2/2005 | Melone et al. | 56/15.8 |

* cited by examiner

*Primary Examiner*—Paul N Dickson
*Assistant Examiner*—Robert A Coker
(74) *Attorney, Agent, or Firm*—Keisling & Pieper PLC; Trent C. Keisling

(57) **ABSTRACT**

In a riding mower having a frame, a mower deck supported beneath the frame, a chair on said frame and a source of motive power also supported on said frame. The frame is supported on forward and rear wheel assemblies, and the wheel assemblies each have a supporting wheel, each wheel assembly having a vibration damping system interposed between the frame and each wheel assembly. The vibration damping system comprising at least one pillow interposed between the frame and each wheel assembly and each pillow being of a resilient material for absorbing shock and vibration resulting from a wheel contacting irregularities in the terrain traversed thereby.

**5 Claims, 4 Drawing Sheets**





Fig. 1

Fig. 2



Fig. 3

Fig. 4

Fig. 5

Fig. 6



Fig. 7

Fig. 8



# INDEPENDENT FOUR WHEEL VIBRATION DAMPING SYSTEM FOR RIDING MOWERS

## BACKGROUND OF THE INVENTION

### 1. Field of the Invention

The present invention relates generally to riding mowers and, more particularly, to an improved suspension system for such mowers.

Riding mowers have been a staple for maintaining highway rights of way for many years. They are seen moving along grassy center dividers and along the sides of roads in rough, sometimes rocky terrain, and in all sorts of attitudes from flat and level to severe side hills.

In many instances, an operator may be in the seat for hours, and even with a kidney belt, will suffer considerable discomfort and, in some cases, injury. Indeed, it is not inconceivable that the constant bouncing and jarring could cause an operator to lose control, resulting in damage to himself and others.

The underlying purpose and function of the present invention is to provide an element of relief to an operator and, coincidently, increased control.

### 2. Overview of the Prior Art

The typical riding mower in use today has its wheels affixed directly to the frame of the mower. In the late '90s the self proclaimed leader in the field, David Ferris, and others filed an application for a suspension system for riding mowers. The application claims priority based on provisionals, at least one of which dates back to 1996, and was divided and one of those continuations-in-part issued as Ferris et al. U.S. Pat. No. 6,460,318. The patent features a four bar mechanism relatively common in automotive suspensions. Another part of the original application is believed to be still pending.

Gordon U.S. Pat. No. 6,170,242 is yet another patent assigned to Ferris Industries and claims priority under a 1997 provisional, which is also claimed under the earlier mentioned Ferris et al. patent. Gordon, like Ferris et al., features a four bar mechanism.

A very early patent featuring a rubber bumper between two elements in an automotive structure is found in Hickman U.S. Pat. No. 3,737,174.

Several other patents offer variations on the same theme. See, for example, Dunlap et al. U.S. Pat. No. 3,669,467, which has additional buffering devices, such as springs, leaf or coil, and shock absorbing devices. Dunlap has a pair of cushions, but also uses a pair of rods 32 and 34, which attach directly to the frame rail.

Krakowiak et al. U.S. Pat. No. 5,979,920, uses the simple bumper between the frame rail and a leaf spring. This is a device which is common on many of the earlier motor vehicles.

Merkle U.S. Pat. No. 4,310,717, uses what he refers to as an elastomeric spring, again, between the frame rail and what he refers to as a web section which holds the axle upon which the wheel is connected. It appears in the drawing that there may be a shock absorber in the middle of this assembly.

Bonzer et al. U.S. Pat. No. 4,559,669, employs a resilient buffer 19 for a caster assembly. Heitzman U.S. Pat. No. 5,899,470 uses a couple of resilient buffers as part of a system for adjusting camber and caster. It is evident from these patents that using an elastomeric as a spring or shock absorber is not new in the art. All of these references seek, to a greater or lesser extent, some modulation of the amplitude and frequency of shock transmitted through a wheel of a vehicle, but are unsuited for a riding mower.

## SUMMARY OF THE INVENTION

The present invention provides, to the user of a riding mower, a vibration damping system interposed between the supporting wheels and the frame, which significantly reduces shock and vibration incident to the movement of the mower over rocks, twigs and incidental debris, especially on uneven terrain.

Another objective, consonant with the foregoing, is to enhance control and stability in the operation of a riding mower, thereby enhancing the quality of the work performed. Yet another objective is to minimize the fatigue and discomfort that may be experienced by the operator of a riding mower as he or she traverses uneven terrain littered with debris.

The foregoing, as well as other objects and advantages, will occur to those skilled in the art as the following detailed description is reviewed in connection with the accompanying drawings, wherein.

## DESCRIPTION OF THE DRAWINGS

FIG. 1 is a perspective view of a typical riding mower having been enhanced by the addition of the vibration damping system of the present invention, as seen from above;

FIG. 2 is a view similar to that of FIG. 1 of the riding mower thereof, but viewed from beneath the mower;

FIG. 3 is an exploded view of a forward wheel assembly illustrating the assembly of the wheel to the frame;

FIG. 4 is an exploded view of the vibration damping apparatus which supports the forward wheel assembly;

FIG. 5 is a side elevation of the forward wheel fully assembled;

FIG. 6 is an end view of the wheel assembly of FIG. 5;

FIG. 7 is a perspective view of the rear axle assembly of the riding mower of FIG. 1, providing a detailed view of the vibration damper assembly of that mower and a partial view of the frame to which it is attached;

FIG. 8 is an exploded view of the vibration damper assembly as it is integrated into the rear axle of the mower of FIG. 1, and providing detail thereof;

FIG. 9 is a side elevation of the rear axle assembly with vibration damping system affixed; and,

FIG. 10 is an enlarged partial side elevation of one side of the rear vibration damping system, with the wheel removed to reveal certain details of the system.

## DETAILED DESCRIPTION OF A PREFERRED EMBODIMENT

With reference now to the drawings, and initially to FIGS. 1 and 2, a riding mower M, is illustrated. The mower M has a frame 16 supported by a pair of forward wheel assemblies 18 and a rear axle assembly 21 having rear wheel assemblies 23.

The frame 16 supports a mower deck 25, and a chair 27 is provided for a driver, with a pair of steering arms 29 within easy reach. A motor compartment 32 rides on the frame and provides motive power to the mower.

The essence of the present invention is the provision of the mower M which has enhanced comfort and less fatigue for the driver, all of which increases the ability of the driver to control the mower, even in unusual attitudes resulting from irregularities in the terrain, and over extended periods of operation, and particularly where terrain changes are abrupt. In accomplishing its objectives, both forward and rear systems of vibration control are interposed between each of the supporting wheel assemblies and the frame of the mower.

Referring first to the forward system, the forward wheel assembly 18 is broken down into its various components in FIGS. 3 and 4. Each wheel assembly includes, as a primary element, the wheel 34. An axle 36 is supported by axle brackets 38. The axle 36 is secured in a forward aperture in the axle bracket so that, once assembled, the wheel will caster. A "U" bracket 41 is provided with a vertical post 43 which is mounted in the frame 16 with bearings 47 nested in a recess in the frame. This assembly permits the wheel to rotate freely about the post. The post 43 is held in place by means of a nut 45, and a grease cap 49 is provided over the nut and a grease zerk provides access to the bearings for grease.

A key to the effectiveness of the forward system is a pair of resilient pillows 52 which are interposed between the axle brackets 38 and the "U" bracket 41. The pillows are strategically positioned on either side of the wheel 32 and, for that purpose, flanges 54 extend outwardly from the "U" bracket. Apertures in the "U" bracket and axle brackets align upon assembly and bolts pass through the apertures to secure the pillows in the proper position to absorb vibration in the wheels due to potholes, debris, tree roots, rocks and stones in the path of the wheels. The bolts are secured above and below the pillow and thus limit downward movement of the wheel to which it is related.

Each pillow is resilient and may be of any one of several durometers of rubber hardness, or may be of other suitable elastomeric materials, including elastic shells with a liquid or other compressible material there within, appropriate to the weight of the mower and the terrain to be traversed. The pillows define a cushion between the wheel and the frame of the mower, thereby absorbing shock created by the wheel moving over the uneven terrain. Further, each wheel functions independently, i.e., independent of the frame, in order that it may respond independently to variations in the terrain met by each individual wheel, which may be several feet removed from its companion wheel.

It is a further feature of the present invention that a rear suspension system is provided with vibration damping capability. Referring to FIGS. 7 and 8, the rear segment of the frame 16 supports a rear axle housing 60 which is mounted transverse to the longitudinal axis of the mower M.

The axle housing 60 comprises a pair of frame rails 62, 63 which support suspension cages 65 at the respective remote ends of the rear axle housing. Each suspension cage comprises a "U" shaped framework having parallel side plates 67 joined by a cross member 69. Each of the suspension cages 65 supports a wheel assembly 72 and, in keeping with the objectives of the invention, are articulated about a pivot pin 74 in a plane transverse to the plane of the rear axle housing 60. The pivot pin 74 is secured in apertures 76 in the frame rails 62. Companion apertures 78 align with the apertures 76 to receive the pivot pins 74 which then permit the movement thereabout.

Movement of the wheel assemblies is limited, and vibration is dampened by the provision of damping pillows 81 which are secured between the axle housing 60 and the cages 65. For this purpose, the frame rails 62, 63 are provided with flanges 83 extending outwardly from each rail. Companion flanges are provided on each of the side plates 67, a flange on a frame rail being vertically aligned with a similar flange on a side plate. As seen in FIG. 8, pillows 81 are positioned between such flanges and a bolt 85 passes through the longitudinal axis of each pillow and is secured in apertures in the aligned flanges to thereby hold the pillow between them. The pillow is sized to abut the flanges above and beneath each, where it is held in place by bolts, and the pillow is compressed by the rapid upward movement of a wheel assembly, thereby dampening that movement and inhibiting, or at least modulating, transmission of that movement to the frame of the mower. The rapid movement resulting from the traversing of rocks and other debris is particularly well dampened. Moreover, if the wheel were to move downwardly, in a pot hole for example, it is inhibited from moving too rapidly or too far from its unstressed position.

The construction of the pillows 81 is substantially the same as described in some detail relative to the pillows 52 used in the forward suspension, with the exception that the hardness may vary as a result of the additional weight that is experienced by the placement of the engine at the rear of the mower.

It will be appreciated, particularly by those skilled in the art, that minor differences in the structure described may be adopted, without a material change in the function or operation of the mower, or departure from the invention as described in the accompanying claims, wherein:

The invention claimed is:

1. A riding mower having a frame, a mower deck supported beneath the frame, a chair on said frame and a source of motive power also supported on said frame;
   said frame supported on forward and rear independent wheel assemblies, said wheel assemblies each supporting a wheel; and a vibration damping system interposed between said frame and each of said forward and rear wheel assemblies, said frame including a rear axle housing mounted transverse to the longitudinal axis of said frame and including parallel frame rails, said frame rails supporting said rear wheel assemblies;
   said vibration damping system comprising at least one elastomeric pillow interposed between said frame and each said forward and rear wheel assembly, said elastomeric pillow being of a resilient material for absorbing shock and vibration resulting from a wheel contacting irregularities in the terrain traversed thereby and said elastomeric pillow held in place by a fastener adapted to limit movement of said wheel assembly.

2. The riding mower of claim 1, wherein said forward wheel assemblies caster in response to vehicle movement.

3. The riding mower of claim 1, wherein said pillow is disposed on either side of each said wheel.

4. The riding mower of claim 1, wherein said rear wheel assemblies include a suspension cage, said suspension cage being pivoted relative to said frame, and pillows supporting said cage.

5. A riding mower having a frame, a mower deck supported beneath the frame, a chair on said frame and a source of motive power also supported on said frame;
   said frame supported on forward and rear independent wheel assemblies, said wheel assemblies each supporting a wheel and said forward wheel assemblies castering in response to vehicle movement and said rear wheel assemblies include a suspension cage, said suspension cage being pivoted relative to said frame; and a vibration damping system interposed between said frame and each of said forward and rear wheel assemblies, said frame including a rear axle housing mounted transverse to the longitudinal axis of said frame and including parallel frame rails, said frame rails supporting said rear wheel assemblies;
   said vibration damping system comprising an elastomeric pillow interposed between said frame and each said forward and rear wheel assembly and on either side of each said wheel, each of said elastomeric pillows being of a resilient material for absorbing shock and vibration resulting from a wheel contacting irregularities in the terrain traversed thereby and each of said elastomeric pillows held in place by a fastener adapted to limit movement of said wheel assembly.

\* \* \* \* \*

# PATENT ASSIGNMENT

Electronic Version v1.1
Stylesheet Version v1.1

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | ASSIGNMENT |

**CONVEYING PARTY DATA**

| Name | Execution Date |
|---|---|
| Robert Foster | 11/11/2009 |

**RECEIVING PARTY DATA**

| Name: | Bad Boy, Inc. |
|---|---|
| Street Address: | 102 Industrial Drive |
| City: | Batesville |
| State/Country: | ARKANSAS |
| Postal Code: | 72501 |

**PROPERTY NUMBERS Total: 1**

| Property Type | Number |
|---|---|
| Application Number: | 11881752 |

**CORRESPONDENCE DATA**

Fax Number:           (479)251-0801
*Correspondence will be sent via US Mail when the fax attempt is unsuccessful.*
Email:                kristin.baldwin@kpslaw.com
Correspondent Name:   Trent C. Keisling
Address Line 1:       3739 Steele Blvd. Suite 340
Address Line 4:       Fayetteville, ARKANSAS 72703

| ATTORNEY DOCKET NUMBER: | 018645 |
|---|---|
| NAME OF SUBMITTER: | Trent C. Keisling |

Total Attachments: 3
source=ASSIGNMENT TO FILE#page1.tif
source=ASSIGNMENT TO FILE#page2.tif
source=ASSIGNMENT TO FILE#page3.tif

**EXHIBIT B**

501038483

OP $40.00 11881752

PATENT
REEL: 023640 FRAME: 0553

## ASSIGNMENT

WHEREAS, ROBERT FOSTER, a citizen of the United States, residing at 100 Plantation, Batesville, Arkansas 72501, (hereinafter called ASSIGNOR), has invented certain new and useful improvements in INDEPENDENT FOUR WHEEL VIBRATION DAMPING SYSTEM FOR RIDING MOWERS, which they have made application for Letters Patent of the United States, the said application having a Serial No. 11/881,752 and filing date of July 30, 2007;

WHEREAS, ASSIGNOR, the said inventor, is now the exclusive owner of said application, the invention described and claimed therein, and all rights in, to and under the same; and;

WHEREAS, Bad Boy, Inc., an Arkansas Corporation doing business at 102 Industrial Drive, Batesville, Arkansas 72501 (hereinafter referred to as ASSIGNEE), is desirous of acquiring the entire right, title and interest in and to the aforementioned invention, application and in, to and under any and all Letters Patent of the United States and in any and all foreign countries thereof.

NOW, THEREFORE, this indenture witnesseth that for and in consideration of the sum of One Dollar ($1.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, ASSIGNOR, the said inventor, has sold, assigned, transferred and set over and do hereby sell, assign, transfer and set over to the said ASSIGNEE, the said invention and application, and any and all divisions and continuations thereof, and any and all Letters Patent of the United States, its territorial possessions, and any and all foreign countries which may be granted therefor, and any and all reissues, extensions or certificates of reexamination of said Letters Patent, including the right of priority and the subject matter of any and all claims which

may be obtained in every such patent, the same to be held and enjoyed by the said ASSIGNEE for its own use and behoof, and for the use and behoof of its successors, assigns, or other legal representatives, to the end of the term or terms for which said Letters Patent of the United States, territories and foreign countries are or may be granted, reissued, extended, or reexamined as fully and entirely as same would have been held and enjoyed by ASSIGNOR, if this assignment and sale had not been made.

AND, ASSIGNOR hereby authorize and request the Commissioner of Patents to issue any and all Letters Patent of the United States on said invention, or resulting from said application, and from any and all divisions and continuations, reissues, extensions, or reexaminations thereof to the said ASSIGNEE, of the entire interest, and hereby covenant that they have full right to convey the entire interest therein assigned, and he has not executed and will not execute any agreement in conflict therewith.

AND, ASSIGNOR further hereby covenant and agree that he will, at any time, upon request, at the expense of said ASSIGNEE, execute and deliver any and all papers that may be necessary or desirable to perfect the title to said invention, and to said Letters Patent as may be granted therefore in said ASSIGNEE, its successors, assigns, or other legal representatives, and that if said ASSIGNEE, its successors, assigns, or other legal representatives shall desire to file any divisional or continuation application, or to secure a reissue, extension or certificate of reexamination of such Letters Patent, or to file a disclaimer relating thereto, will, upon request, sign all papers, make all rightful oaths, and do all acts requisite for the filing of such divisional or continuing application, or such application for reissue or request for reexamination and procuring thereof, and for the filing of such disclaimers, without further compensation, but at the expense of said ASSIGNEE, its successors or other legal representatives.

AND, ASSIGNOR does further covenant and agree, that he will, at any time, upon request, communicate to said ASSIGNEE, its successors, assigns, or other legal representatives, at its expense, such facts relating to said invention, application, and Letters Patent or the history thereof, as may be known to him, and testify as to the same in any interference or other litigation, when requested to do so.

IN WITNESS WHEREOF, I have hereunto set my hand.

11-11 09
Date

Robert Foster

STATE OF ARKANSAS )
                  ) ss:
COUNTY OF Independence )

On this 11 day of Nov., 2009, before me personally appeared Robert Foster, to me known to be the person described hereinabove who executed the foregoing Assignment, and who acknowledged to me that he executed the same for the reasons and purpose therein set forth.

My Commission Expires:

7-22-2012

Valarie Martin
Notary Public
Seal

OFFICIAL SEAL
VALARIE MARTIN
NOTARY PUBLIC-ARKANSAS
INDEPENDENCE COUNTY
MY COMMISSION EXPIRES: 07-22-12